PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Russell and Senior Judge Bumgardner
Argued at Norfolk, Virginia


ROBERT RYAN GRASTY

                                                       OPINION BY
v.       Record No. 0281-17-1               JUDGE ROBERT J. HUMPHREYS
                                                   DECEMBER 5, 2017

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Bryant L. Sugg, Judge

Jessica E. B. Crossett, Deputy Public Defender (Daniel B. Winegard,
Assistant Public Defender, on brief), for appellant.

J. Christian Obenshain, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Robert Ryan Grasty ("Grasty") appeals the December 7, 2015 decision of the Circuit

Court of the City of Newport News (the "circuit court") convicting him of a third or subsequent

offense of driving on a suspended or revoked license, in violation of Code § 46.2-301(B). Grasty

argues that the circuit court erred in convicting him of driving on a suspended license, third or

subsequent offense because at the time of the offense, he qualified for the exemption to the

driver's license requirements provided for commercial fishermen through Code §§ 46.2-300,

46.2-303, and 46.2-674.

I. BACKGROUND

On April 17, 2015, Grasty was driving a pickup truck with commercial waterman

("commercial fisherman") license plates when he was involved in a two-vehicle accident.

Newport News Police Officer Andrew Scott ("Officer Scott") investigated the accident. When

Officer Scott asked for Grasty's driver's license and insurance information, Grasty notified

Officer Scott that he did not have a valid driver's license. A subsequent check of Grasty's information with the Department of Motor Vehicles ("DMV") revealed that Grasty's driving privileges were suspended. Grasty, however, produced a copy of Code § 46.2-303 for Officer Scott and asserted that he did not need a driver's license under the circumstances because, at the time of the accident, he was a commercial fisherman operating a commercial fisherman's vehicle. Apparently unpersuaded by Grasty's roadside legal analysis, Officer Scott issued Grasty a summons for a third or subsequent offense of driving on a suspended or revoked license, in violation of Code § 46.2-301(B).

On December 7, 2015, following a bench trial, the circuit court convicted Grasty. At trial, the Commonwealth introduced into evidence, without objection, Grasty's DMV transcript reflecting two prior convictions for driving while suspended in Isle of Wright County. Additionally, Grasty's DMV transcript revealed that, on the day of the accident, Grasty's driver's license was suspended indefinitely and that Grasty had notice of the suspension. The Commonwealth did not dispute that Grasty was operating his vehicle as a commercial fisherman. Nevertheless, the Commonwealth argued and the circuit court agreed that, notwithstanding his status as a commercial fisherman, Grasty's suspended driver's license operated as a complete bar to his privilege to drive.

Following Grasty's conviction, the circuit court continued disposition of the matter until June 13, 2016, at 10:00 a.m., to allow Grasty time to obtain a valid driver's license. On January 26, 2017, however, the circuit court found that Grasty was not able to obtain a valid driver's license. Accordingly, the circuit court sentenced Grasty to 180 days in jail, with 170 days suspended, a ninety-day suspension of his privilege to drive, and a $500 fine, which was also suspended. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

The assignment of error presented in this appeal raises a question of statutory construction, which we review *de novo*. See Barden v. Commonwealth, 64 Va. App. 700, 706, 771 S.E.2d 699, 702 (2015). "The primary objective of statutory construction is to ascertain and give effect to legislative intent. The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Turner v. Commonwealth, 67 Va. App. 46, 63, 792 S.E.2d 299, 307 (2016) (quoting Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)). Consequently, courts apply the plain meaning of a statute "unless the terms are ambiguous or applying the plain language would lead to an absurd result." Tisdale v. Commonwealth, 65 Va. App. 478, 483, 778 S.E.2d 554, 557 (2015) (quoting Baker v. Commonwealth, 284 Va. 572, 576, 733 S.E.2d 642, 644 (2012)).

### B. Whether the Suspension of the Privilege to Drive Prohibits Driving as a Commercial Fisherman

Grasty was charged and convicted of a third or subsequent offense of driving on a suspended or revoked license, in violation of Code § 46.2-301(B). Specifically, Code § 46.2-301(B) states the following:

> Except as provided in §§ 46.2-304 and 46.2-357, no resident or nonresident (i) whose driver's license, learner's permit, or privilege to drive a motor vehicle has been suspended or revoked or (ii) who has been directed not to drive by any court or by the Commissioner, or (iii) who has been forbidden, as prescribed by operation of any statute of the Commonwealth or a substantially similar ordinance of any county, city or town, to operate a motor vehicle in the Commonwealth shall thereafter drive any motor vehicle or any self-propelled machinery or equipment on any highway in the Commonwealth until the period of such suspension or revocation has terminated or the privilege has been reinstated or a restricted license is issued pursuant to subsection E. . . .

Violation of this statute is a Class 1 misdemeanor. See Code § 46.2-301(C). Grasty notes, however, that Code § 46.2-300 exempts commercial fishermen from the need to have a driver's license at all under certain parameters. As a result, Grasty argues that a suspension of the privilege to drive does not prevent one who qualifies for an exemption to the licensing requirement as a commercial fisherman from driving, despite their suspended or revoked status.

In support of his assignment of error, Grasty relies on Code §§ 46.2-300, 46.2-303, and 46.2-674. Generally, Virginia requires drivers travelling on any highway of the Commonwealth to possess a valid driver's license, pursuant to Code § 46.2-300. As a narrow exception to this rule, however, Code § 46.2-300 exempts certain individuals from Virginia's general driver's license requirements. Specifically, Code § 46.2-300 states as follows:

> No person, *except those expressly exempted in §§ 46.2-303 through 46.2-308*, shall drive any motor vehicle on any highway in the Commonwealth until such person has applied for a driver's license, as provided in this article, satisfactorily passed the examination required by § 46.2-325, and obtained a driver's license, nor unless the license is valid.

(Emphasis added).

Grasty's argument then proceeds to Code § 46.2-303, one of the exemptions listed by Code § 46.2-300. Specifically, Code § 46.2-303 provides that "[n]o person shall be required to obtain a driver's license for the purpose of operating any farm tractor, farm machinery, *or vehicle defined in §§ 46.2-663 through 46.2-674*, temporarily drawn, moved, or propelled on the highways." (Emphasis added).

Code § 46.2-674, the last statute in the chain that Grasty relies on, defines vehicles used by commercial fishermen. Specifically, the statute characterizes vehicles used by commercial fishermen as "any motor vehicle, trailer, boat trailer, or semitrailer, or any combination thereof not having a gross vehicle weight exceeding 12,000 pounds used by commercial fishermen, their agents, or employees for [three specific purposes]." Code § 46.2-674. The specific purpose

- 4 -

implicated in Grasty's case is described in subsection three of the statute, which permits "[t]ransporting harvested seafood no more than 50 miles between the place where the seafood is first brought ashore and the transporter's place of business or the location of the seafood's first point of sale." Code § 46.2-674(3). The Commonwealth does not contest that, at the time of the instant offense, Grasty was a commercial fisherman transporting a recent catch to market within fifty miles from the place the fish were caught. Thus, we assume without deciding that, at the time of the offense, Grasty qualified for an exemption of the requirement that he be a licensed driver. However, that does not end the analysis.

Grasty contends that, because he did not need a license to operate his vehicle at the time of the offense, the trial court erred in convicting Grasty of a third or subsequent offense of driving on a suspended or revoked license. However, the statute that we must initially construe is the one that formed the basis for Grasty's conviction. Code § 46.2-301(B) provides in pertinent part that:

> *Except as provided in §§ 46.2-304 and 46.2-357, no resident or nonresident (i) whose driver's license, learner's permit, or privilege to drive a motor vehicle has been suspended or revoked . . . shall thereafter drive any motor vehicle or any self-propelled machinery or equipment on any highway in the Commonwealth until the period of such suspension or revocation has terminated or the privilege has been reinstated or a restricted license is issued . . . .*

(Emphasis added). In other words, with the exception of the two statutory exemptions found in *this* statute, the General Assembly has prohibited *all* others whose license has been suspended or revoked from driving on the highways of the Commonwealth while such suspension or revocation is in effect, unless they obtain a restricted license. We need not resolve any conflict between these various statutes because we see no conflict.

The Supreme Court's decision in Triplett v. Commonwealth, 212 Va. 649, 186 S.E.2d 16 (1972), a case not cited by either of the parties, also guides our analysis in this case. In Triplett,

the defendant had been adjudicated a "habitual offender" under the Virginia Habitual Offender

Act (the "Act").[1]  See id. at 651, 186 S.E.2d at 18.  The order declaring the defendant a habitual

offender prohibited the defendant from operating *any* motor vehicle on the highways of the

Commonwealth, and stated that no "license to operate a motor vehicle could be issued to him for

[at] least ten years."  Id. at 652, 186 S.E.2d at 18.  Several years after being adjudicated a

habitual offender, the defendant was arrested and convicted of driving on a suspended or revoked

license.  See id. at 651, 186 S.E.2d at 17.  Specifically, a police officer witnessed the defendant

drive a short distance along a secondary road in a regular model half-ton pickup truck.  See id.

The defendant's pickup truck did not display license plates, but instead had the words "Farm

Use" painted on each side.  See id.  On appeal, the defendant argued that, under the Act, "it was

not unlawful for him to operate a 'farm use' vehicle since the operator of such a vehicle is not

required to have an operator's or chauffeur's license."  Id. at 651, 186 S.E.2d at 17-18.

Examining the Act, the Supreme Court held that under Code § 46.1-387.8, a statute now

repealed, "[t]he order declaring [the defendant] an habitual offender prohibited him from

operating *any* motor vehicle on the highways of the [Commonwealth] . . . ."  Id. at 651-52, 186

S.E.2d at 18 (emphasis added).  The single exemption to the prohibition, as noted by the

Supreme Court, provided that an order designating an individual as a habitual offender:

> [S]hall not operate to prevent or prohibit such person from
> operating a farm tractor upon the highways when it is necessary to
> move such tractor from one tract of land used for agricultural
> purposes to another tract of land used for the same purposes,

---

[1] See Code §§ 46.1-387.1-46.1-387.12 (repealed 1989).  Under the version of the Act in effect at the time of the Triplett decision, a habitual offender was defined as any person whose DMV record reflected that he or she has been convicted of three or more separate and distinct specified offenses, within a ten-year period.  See Code § 46.1-387.2 (repealed 1989).  A person adjudicated a habitual offender could not be licensed to operate a motor vehicle for a period of ten years.  See Code § 46.1-387.9 (repealed 1989); see also Note, The Virginia Habitual Offender Act, 26 Wash. & Lee L. Rev. 271, 272 (1969) (summarizing the various provisions of the Virginia Habitual Offender Act).

> provided that the distance between the said tracts of land shall not exceed five miles.

Id. at 652, 186 S.E.2d at 18; see also Code § 46.1-387.8 (repealed 1989).

Though lacking an in-depth explanation of its holding, the Supreme Court's decision in Triplett is controlling in the present case. Triplett stands for the proposition that, under then existing law, adjudication as a habitual offender barred an individual's privilege to drive any motor vehicle on the highways of the Commonwealth, regardless of whether the operator was required to possess a valid driver's license in the first place. Additionally, the Supreme Court's conclusion that the defendant in Triplett was operating an ordinary pickup truck, and not a farm tractor within the meaning of the exemption, did not alter its holding. See Triplett, 212 Va. at 651-52, 186 S.E.2d at 17-18.

The only rationale that can be inferred from the Supreme Court's decision in Triplett is also applicable here. Driving a motor vehicle on the highways of the Commonwealth is a privilege subject to regulation. It seems evident to us that the legislative intent embodied by Code § 46.2-300 is to generally allow those who obtain a valid license and those, such as Grasty, who qualify for an exemption to the license requirements to exercise that privilege to drive on the Commonwealth's highways. However, the legislative intent plainly expressed in Code § 46.2-301(B) is that, subject only to the specific exemptions provided in Code § 46.2-301 and defined in §§ 46.2-304 and 46.2-357,[2] *anyone and everyone else* permitted the privilege to drive, whether obtained through a license or through a statutory exemption, can have their privilege to drive revoked or suspended for various reasons. In short, an exemption from the licensing requirement is not the equivalent of legislative immunity from any and all consequences of violating the rules of the road.

---

[2] Neither of these statutory exceptions apply to Grasty.

We therefore hold that the suspension of Grasty's privilege to drive under Code § 46.2-301(B) prohibited him from operating *any* motor vehicle on the highways of the Commonwealth. As in <u>Triplett</u>, Grasty's privilege to drive was suspended indefinitely and Grasty had notice of his suspension. Following the holding in <u>Triplett</u>, the suspension of Grasty's privilege to drive under Code § 46.2-301(B) barred Grasty from operating any motor vehicle on the highways of the Commonwealth, regardless of the fact that Grasty was a commercial fisherman operating a commercial fisherman's vehicle within the parameters permitted by Code §§ 46.2-300, 46.2-303, and 46.2-674.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court convicting Grasty of a third or subsequent offense of driving on a suspended or revoked license, in violation of Code § 46.2-301(B) is affirmed.

<u>Affirmed.</u>